IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| SAMUEL ELMER PEARSON, III and | * | CHAPTER 7 |
| CHRISTINA PEARSON, | * | |
|     Debtors | * | |
| | * | CASE NO. 1:10-bk-00946MDF |
| THE BUR-CAM GROUP, LLC, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | ADV. NO. 1:10-ap-00184 |
| | * | |
| SAMUEL ELMER PEARSON, III and | * | |
| CHRISTINA PEARSON, | * | |
|     Defendants | * | |

## OPINION

On November 25, 2009, Bur-Cam Group, LLC ("Bur-Cam") filed a lawsuit in state court against Samuel and Kristina Pearson ("Debtors") and others to recover losses allegedly suffered in purchasing a parcel of commercial real estate (the "Property"). The state court suit was transferred to the United States District Court for the Middle District of Pennsylvania and was pending when Debtors filed their bankruptcy petition on February 5, 2010. Bur-Cam filed the instant adversary case seeking a determination that any judgment it may obtain in the District Court will not be discharged Debtors' Chapter 7 case. Debtors have moved to dismiss the complaint alleging Bur-Cam lacks standing to object to the discharge of any debt they owe and that Bur-Cam has failed to state a claim on which relief may be granted. For the reasons discussed below, the motion to dismiss will be granted in part and denied in part.

I. **Factual and Procedural History**

In October 2007, Peanut Oil, LLC ("Peanut Oil"), a Pennsylvania limited liability company, sold a parcel of commercial real estate in Sayre, Pennsylvania (the "Property") to John

and Debra Reckling (the "Recklings") for $1.1 million. Debtor Samuel Pearson ("Pearson") held an ownership interest in Peanut Oil until it filed for relief under Chapter 7 on June 16, 2008.[1] The complaint before me states that Peanut Oil provided owner financing for the sale and took back a mortgage on the Property to secure the loan to the Recklings. Peanut Oil operated a Jiffy Lube franchise on the Property before the sale, and it continued to operate the franchise after the Recklings bought the Property.

On January 30, 2008, the Recklings sold the Property to Bur-Cam for $1.3 million. In the course of the sale negotiations, Peanut Oil, as the Recklings' tenant, supplied data regarding its financial status, assets, and earnings to the real estate agent brokering the sale, who forwarded the information to Bur-Cam.[2] The complaint before me alleges that Bur-Cam relied on this data when it agreed to purchase the Property. As indicated above, Bur-Cam sued Pearson, the Recklings and others in November 2009 to recover all but $250,000 of the purchase price.

Although Bur-Cam is not named as a creditor in any of Debtors' schedules, on May 14, 2010, it filed the complaint now before me objecting to the discharge of its debt under 11 U.S.C. § 523(a)(2). Bur-Cam alleges that its claim against Debtors is based on false or misleading information Pearson provided to Bur-Cam, which induced it to buy the Property from the Recklings. Specifically, Bur-Cam alleges that Pearson produced balance sheets for December 31, 2007 which state that as of the end of the year: Peanut Oil held real estate valued at

---

[1] The complaint in this case indicates that there were two other individuals who held ownership interests as "members" of Peanut Oil, LLC.

[2] In connection with the sale, Peanut Oil executed a twenty-year lease agreement with Bur-Cam calling for monthly lease payments of $10,833.33 in the first year. The complaint alleges that Peanut Oil made only one lease payment before it filed bankruptcy and ceased operations.

2

$4,480,000 and equipment valued at $1,744,678; it had cash on hand of $342,332; and it held receivables of $45,765. By comparison, the schedules filed in Peanut Oil's bankruptcy case on August 11, 2008 report no real estate holdings, equipment worth only $12,000, no cash on hand, and receivables of only $8,823. The complaint alleges that Pearson knew that the financial data he produced was false and that he intended to deceive Bur-Cam by supplying the information. Bur-Cam alleges that it has suffered damages in the amount of $1,050,000, that Debtors are personally liable for the damages and that the damages are not dischargeable under § 523(a)(2).[3]

On May 20, 2010, Debtors moved to dismiss the complaint to which Bur-Cam filed an answer. The parties have filed briefs on the matter, which is ready for decision.[4]

## II. Discussion

Debtors' motion to dismiss notes that the sales transaction on which Bur-Cam bases its claim was executed exclusively between Bur-Cam and the Recklings. Debtors argue that any liability for fraud must be based on a misrepresentation by the Recklings, who received the purchase price. Bur-Cam responds that Pearson is liable to Bur-Cam because he benefitted personally from the sale. Specifically, Bur-Cam alleges that because Peanut Oil held a mortgage on the Property, closing on the sale to Bur-Cam allowed Peanut Oil to obtain funds from the settlement to satisfy the mortgage. Bur-Cam avers that because Pearson was an owner of Peanut Oil, he benefitted when it received the funds necessary to pay off the loan.

---

[3] It bases its measure of damages on the difference between the sales price for the real estate, $1.3 million, and its estimation of the actual value, $250,000.

[4] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

3

*A. Standard for deciding a motion to dismiss under Fed. R. Bankr. P. 7026*

Fed. R. Bankr. P. 7026 incorporates by reference Fed. R. Civ. P. 12(b)(6), which provides for dismissal of a complaint that fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, a court must treat the facts alleged in the complaint as true, construe the complaint in the light most favorable to the non-moving party, draw all reasonable inferences that can be drawn from the complaint in favor of the non-moving party, and ask whether, under any reasonable reading of the complaint, the non-moving party may be entitled to relief as a matter of law. *Kehr Packages, Inc.v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d. Cir.), *cert. denied*, 111 S.Ct. 2839 (1991).

*B. Elements of a case for nondischargeability under § 523(a)(2)(A) and (B)*

Section 523(a)(2) provides that a debtor will not receive a discharge of a debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (B) use of a statement in writing –
> (i)  that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. § 523(a)(2).

Paragraph (A) encompasses general claims for fraud, while paragraph (B) addresses fraud in a writing concerning the financial condition of the debtor or an insider. I will address §523(a)(2)(A) first.

4

*(1) §523(a)(2)(A)*

"In order to succeed in a § 523(a)(2)(A) claim, a creditor must prove the following five common law elements of fraud: (1) the debtor made a false representation; (2) the debtor knew the representation was false when it was made; (3) the debtor intended to deceive the creditor or to induce him to act upon the representation; (4) the creditor justifiably relied upon the representation; and (5) the creditor sustained a loss as a proximate result of the representation." *Rembert v. AT & T Universal Card Services, Inc. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998); *In re Glunk,* 343 B.R. 754, 759 (Bankr. E.D. Pa. 2006); *In re Santos,* 304 B.R. 639, 651 (Bankr. D. N.J. 2004); *In re Giarratano,* 299 B.R. 328, 334 (Bankr. D. Del. 2003). Even when all elements of a common law case for fraud are averred, however, a § 523(a)(2)(A) case cannot be made out if the representation giving rise to the fraud was one "with respect to the debtor or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

"The term 'insider' includes[,] if the debtor is an individual[,] [a] corporation of which the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31)(a)(iv). In this case, Peanut Oil is a limited liability company, which is the equivalent of a corporation for purposes of § 101(31)(a)(iv). *See Longview Aluminum, L.L.C. v. Brandt*, 431 B.R. 193, 197 (N.D. Ill. 2010); *In re Lull* 2009 WL 3853210, 4 (Bankr. D. Haw.); *In re Barman,* 237 B.R. 342, 348 (Bankr. E.D. Mich. 1999) (LLC is analogous to a corporation for determination of insider status). Bur-Cam's complaint states that Pearson is a "member" of Peanut Oil, LLC. In Pennsylvania, members of limited liability companies are individuals with an ownership interest in the LLC and a right to participate in the management of the business. *Zokaites v. Pittsburgh Irish Pubs, LLC*, 962 A.2d

5

1220, 1223 (Pa. Super. 2008) *citing* 15 Pa.C.S.A. § 8924(a).[5]  Since Pearson is a member of the LLC, Peanut Oil is an "insider" of Pearson.  Accordingly, for purposes of § 523(a)(2)(A), the financial information about Peanut Oil provided by Pearson to Bur-Cam constituted representations regarding the financial status of an insider.  Therefore, Bur-Cam has failed to state a claim upon which relief can be granted under §523(a)(2)(A), and the motion to dismiss is granted as to the objection to discharge based upon this subparagraph.

(2)  *§523(a)(2)(B)*

A claim under § 523(a)(2)(B) must involve the "use of a statement in writing: (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." *In re Deweil*, 2009 WL 1750200, 9 (Bankr. D. N.J.) (citing *In re Cohn,* 54 F.3d 1108, 1114 (3d Cir. 1995).  Bur-Cam's complaint alleges that Pearson produced written documents purporting to describe the value of Peanut Oil's real estate, equipment, cash, and receivables.  According to Bur-Cam, these documents grossly overstated the value of Peanut Oil's assets and, thus, were materially false statements respecting Peanut Oil's financial condition.  Bur-Cam alleges that it reasonably relied on the information and that Pearson used these documents to deceive Bur-Cam about Peanut Oil's true financial condition.  Thus, Bur-Cam's complaint pleads each of the

---

[5]Management of a Pennsylvania LLC is vested in it members unless a specific manager is named on its certificate of organization filed with the Corporations Bureau of the Pennsylvania Department of State.  15 Pa.C.S.A. § 8913(5). *Comment: New Business Options in Pennsylvania: A Critical Analysis of the Pennyslvania Limited Liability and Limited Liability Partnership Act of 1994,* 57 U. PITT. L. REV. 129, 134 (Fall, 1995), *cited in Missett v. Hub Intern. Pennsylvania, LLC*, 2010 WL 3704984, 14 (Pa.Super.).

elements of a § 523(a)(2)(B) case, which I must accept as true for purposes of deciding Debtors' motion to dismiss.

Debtors assert that they received nothing directly from Bur-Cam in connection with the Recklingers' sale of the Property. Therefore, they argue, they owe no debt to Bur-Cam for "money, property, services or an extension, renewal or refinancing of credit." To support their argument, Debtors cite the case of *In re Moore*, 365 B.R. 589 (Bankr. D. Md. 2007), for the proposition that § 523(a)(2) does not apply to "simply any debt incurred as a result of fraud but only debts in which the debtor used fraudulent means to obtain money, property or services." *Id.* at 599. In light of other case law, discussed below, I cannot accept Debtors' argument as establishing that they are entitled to judgment as a matter of law.

A creditor is not required to prove "that the debtor directly and personally received every dollar lost by the creditor" to succeed in a § 523(a)(2) action. *In re Brady*, 101 F.3d 1165, 1172 (6th Cir. 1996). In *Brady*, the debtor persuaded an individual, Donald McAllister ("McAllister") to jointly purchase a parcel of commercial real estate with KAK Real Estate, Inc. ("KAK"). The debtor was president of KAK. The parties each paid half of the purchase price of $180,000 and agreed that they would similarly divide the proceeds of any future sale. Eleven months after acquiring the parcel, KAK sold the property for $290,000, but represented to McAllister that the sale price was only $210,000. After closing, KAK pocketed the $80,000 in proceeds that the debtor failed to disclose to McAllister. When the debtor filed his bankruptcy case, McAllister filed a § 523(a)(2) complaint alleging that the debtor owed him $40,000 and that the debt was nondischargeable because the funds were obtained by fraud. Brady argued that he personally owed no debt to McAllister because the $80,000 had been paid to KAK. After a trial on the

7

merits, the bankruptcy court found in favor of McAllister, holding that the $40,000 debt owed to McAllister was nondischargeable under § 523(a)(2)(A). On appeal to the Sixth Circuit, the Court of Appeals affirmed, reasoning as follows:

> Assuming that a plaintiff proceeding under section 523(a)(2)(A) must show that the debtor directly or indirectly obtained some tangible or intangible financial benefit as a result of his misrepresentation, . . . creditor has proven that debtor "obtained" money through his misrepresentations by showing that debtor infused a corporation which he controlled with $40,000.

*In re Brady*, 101 F.3d at 1172 (citations and footnote omitted).

*Brady*'s facts compare favorably to the allegations of Bur-Cam's complaint. The debtor's corporation, and therefore the debtor himself, obtained cash in a sale transaction in which debtor personally committed fraud against a third party. The cash that the debtor's corporation failed to turn over to McAllister was determined to be a nondischargeable debt under § 523(a)(2)(B) even though the debtor did not directly receive "money, property, services or an extension, renewal or refinancing of credit." In the within case, Peanut Oil obtained cash in a sale transaction in which Pearson allegedly committed a fraud on a third party, Bur-Cam. If it is determined that the funds received by Peanut Oil in satisfaction of the mortgage were obtained through fraud and that Bur-Cam has a claim against Pearson for those funds, then Bur-Cam may be able to establish that the indirect benefit received by Pearson supports a finding that its purported claim is non-dischargeable. While the substantive issue of whether or not Pearson committed actionable fraud is one to be decided by the District Court, at this point Bur-Cam's objection to discharge under § 523(a)(2)(B) is sufficient to survive the motion to dismiss.

### III. Conclusion

As a matter of law, Bur-Cam has failed to state a claim for relief under §523(a)(2)(A). Therefore, the motion to dismiss will be granted to the extent that the complaint relies on that subparagraph. If Bur-Cam establishes that it has a claim against Pearson, all of the elements necessary to determine whether the debt is excepted from discharge under § 523(a)(2)(B) have been alleged. These allegations must be accepted as true for purposes of this motion. Accordingly, Debtors' motion to dismiss will be denied. An appropriate order will follow.

**By the Court,**

*/s/ Mary D. France*
Chief Bankruptcy Judge

Date: October 7, 2010